AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

## District of Columbia

| | |
|---|---|
| HARRY J. JORDAN, ESQ. | ) ) ) ) |
| *Plaintiff(s)* | ) ) |
| v. | ) ) Civil Action No. |
| DICKINSON WRIGHT PLLC<br>JEFFREY CRAVEN, ESQ.<br>MICHAEL A. VARTANIAN, ESQ. | ) ) ) ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

DICKINSON WRIGHT PLLC JEFFREY CRAVEN, ESQ. MICHAEL A. VARTANIAN, ESQ.
1825 EYE STREET, NW, #900 DICKINSON WRIGHT PLLC DICKINSON WRIGHT PLLC
WASHINGTON, DC 20006 1825 EYE STREET, NW, #900 350 S. MAIN STREET, #900
 WASHINGTON, DC 20006 ANN ARBOR. MI 48104

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

 HARRY J. JORDAN, ESQ.
 1101 17TH STREET, NW, #609
 WASHINGTON, DC 20036-4718

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____    _____
              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____            _____
                                              *Server's signature*

                                          _____
                                              *Printed name and title*

                                          _____
                                              *Server's address*

Additional information regarding attempted service, etc:

## CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Harry J. Jordan, Esq. | Dickinson Wright, PLLC<br>Jeffrey Craven, Esq.<br>Michael A. Vartanian, Esq. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 88888<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Harry J. Jordan, Esq., Pro Se<br>1101 17th Street, NW, Suite 609<br>Washington, DC  20036-4718<br>(202) 416-0216 | ATTORNEYS (IF KNOWN)<br>Jonathan Redway, Esq.<br>Chelsea M. Smialek,, Esq.<br>Dickinson Wright PLLC<br>1825 Eye Street, NW, Suite 900<br>Washington, DC 20006 |

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

⊙ 4 Diversity (Indicate Citizenship of Parties in item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ⊙ 4 | ○ 4 |
| Citizen of Another State | ⊙ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ⊙ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*          **OR**          ⊙ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☒ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/ Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi-district Litigation ○ 7 Appeal to District Judge from Mag. Judge ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Conspiracy to defraud, fraud, and breach of contract.  Compensatory damages: $116,000, punitive $300,000

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | DEMAND $ 416,000<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |

DATE: 3/22/2019         SIGNATURE OF ATTORNEY OF RECORD _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.     CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.     RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HARRY J. JORDAN**<br>**8601 Cathedral Forest Drive**<br>**Fairfax Station, VA  22039,**<br><br>**Plaintiff,**<br><br>v.<br><br>**DICKINSON WRIGHT PLLC**<br>**1825 Eye Street, NW, Suite 900**<br>**Washington, DC 20006,**<br><br>**JEFFREY CRAVEN, ESQ.**<br>**DICKINSON WRIGHT PLLC**<br>**1825 Eye Street, NW, Suite 900**<br>**Washington, DC 20006, and**<br><br>**MICHAEL A. VARTANIAN, ESQ.**<br>**DICKINSON WRIGHT PLLC**<br>**350  S. Main Street, Suite 900**<br>**Ann Arbor, MI 48104**<br><br>**Defendants.** | CIVIL ACTION NO._____ |

### COMPLAINT
### (CONSPIRACY TO DEFRAUD, FRAUD
### AND BREACH OF CONTRACT)

Plaintiff, Harry J. Jordan, complains against Defendants Dickinson Wright PLLC (DW),

Jeffrey Craven, Esq., and Michael A. Vartanian, Esq., as follows.

### NATURE OF CASE

1.     This is an action by Jordan against DW and two of its senior members to recover

damages for conspiracy to defraud, fraud, and breach of contract in connection with the

1

assurance and promise to pay the legal fees and expenses owed to Jordan by Dawn J. Bennett

(Bennett), a former client of DW. Plaintiff's claims are based on common law.

## PARTIES

2.      Jordan is a member in good standing of the District of Columbia Bar. He is

admitted to practice before this court, the U.S. Court of Appeals for the DC Circuit, and the

Supreme Court, among other jurisdictions. A practicing attorney since 1960, he specializes in

litigation and general business and corporate matters.

3.      DW is a full service law firm, with offices throughout the United States, including

the District of Columbia. It also provides legal services for a broad international client base with

offices in the Far East.

4.      Craven and Vartanian were personally involved in the misconduct involved in this

litigation.

## JURISDICTION AND VENUE

5.      Jurisdiction of this court exists under 28 U.S.C. § 1332 in that the parties are

citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests

and costs. Venue lies in the District pursuant to 28 U.S.C. §1391 since the events giving rise to

this suit took place here.

## STATEMENT OF FACTS

6.      Bennett is the principal owner and chief operating officer of DJB Holdings, a

retailer of high-end sports apparel, and sole owner of Province of the Dragon, LLC (Province).

7.      In December 2016, Bennett retained DW to provide legal services for Province; it

quickly ran up more than $50,000 in unpaid legal fees and expenses.

8.      On November 29, 2017, a federal grand jury in Maryland indicted Bennett on multiple counts of securities, wire, and bank fraud, and giving false information on loan applications.

9.      On December 29, 2017, DW entered into a Security Agreement with Bennett and Province under which Bennett pledged over $650,000 of her personal assets as collateral for payment of the past due indebtedness and as an inducement for DW to continue to provide legal services. Craven signed the agreement on behalf of DW and Bennett for herself personally and as sole owner and chief executive officer of Province.

10.     By September 17, 2018, Bennett and Province owed DW $842,080.15 in unpaid legal fees and expenses, and they entered into a Settlement Agreement. As further security for what was owed, Bennett surrendered to DW possession, control, and unrestricted access to the personal property in her residences on Wisconsin Avenue in the District. As part of the Settlement Agreement, DW agreed to pay $320,000 in retainer and legal fees owed by Bennett to Whiteford Taylor and KaiserDillon.

11.     In 2017, Bennett and DJB Holdings also retained Jordan to represent them. He appeared on their behalf on numerous occasions in the DC Superior Court, this court, the DC Circuit Court of Appeals, and various administrative agencies. At first Bennett and DJB Holdings kept reasonably current in the payment of their legal bills, but then got behind and eventually stopped paying altogether. At January 31, 2018, Jordan was owed $115,983.52.

12.     On January 5, 2018, Jordan received this e-mail from Craven, "Ms. Bennett would like me to get your wire instructions for a payment next week." "These funds are coming from the sale of art that she has owned for over 15 years." Jordan sent the instructions, but nothing was sent. (Appendix A, p. 1.)

13.    On February 2, 2018, Jordan e-mailed Craven, "Has anything been done on my billing?" Craven replied, "I have put in for a partial ($20,000) payment." "You should have it next week. We have additional assets that we are in the process of positioning for sale. We are working to catch-up with you and other trusted counsel as quickly as we can." Id., at 3-4.

14.    Jordan sent Craven a summary of the proceedings in which he was representing Bennett and their status. He also pointed out that his unpaid legal fees were "over $100,000 and have been for some time," and that Craven had promised several times that at least $20,000 would be promptly paid toward that debt and nothing had been sent. "Please send what has been promised. . . ." Id., at 5.

15.    Craven answered, "Yes, I know you are owed a substantial balance and I acknowledge that I said we would get you a payment." He went on to say that there was a tax lien, the size of which he was unaware, and it limited our ability to pay, and that there was a dispute with the art broker. "Please give me until next Wednesday to get you the payment. . . ." Id., at 6.

16.    Mindful of past unfulfilled promised, Jordan asked Craven on February 28, 2018 whether DW was stringing him along. Id., at 10. Craven denied that this was the case, again using the excuse of the tax lien and claiming the art broker was improperly withholding $350,000 from the art sales. Id. On March 1, 2018, Craven e-mailed Jordan, "no flow just yet." Id., at 13.

17.    On March 20, 2018, Jordan filed suit against Bennett and DJB Holdings in the D.C. Superior Court to recover his unpaid legal bills. On April 5, 2018, Jordan again reminded Craven, "I know you said that I would be paid something, but nothing has materialized." "Where do I stand?" Id., at 17.

18.     On September 4, 2018, the Superior Court entered a judgment in Jordan's favor

for $115,983.52, plus costs and interest. A week later, Jordan e-mailed Craven asking whether

the art work had been sold, and if so, what money was left? Id., at 20.  There was no response to

that inquiry, but the same day Jordan received this e-mail form Craven: "We do not rep her at

this time." "She is in jail as far as I know." Id.,  at 20.

19.     On November 5, 2018, Jordan served a Writ of Attachment on DW based on Mr.

Craven's representations and assurances that his firm possessed assets belonging to Bennett,

including several valuable art works, which had been sold, and was selling other assets to pay

Bennett's legal expenses including what was owed Jordan.

20.     Vartanian, DW's General Counsel, responded to the writ's two interrogatories:

1.     At the time of service of the writ, and at the time this answer is filed, Dickinson
Wright PLLC is not indebted to any of the defendants. Under the terms of a settlement
agreement with Dawn Bennett executed prior to the service of the writ, Dickinson Wright is
obligated to make certain payments in the future to certain entities other than defendants, and
may also in the future (subject to certain contingencies which have not occurred and may not
occur) become obligated to make certain payments to Dawn Bennett.

2.     At the time of service of the writ and at the time this answer is filed. Dickinson
Wright is not in possession or charge of any goods, chattels, or credits of defendants. (Appendix
B)

21.     On November 27, 2018, Jordan wrote Chelsea M. Smialek, DW's counsel,

questioning the truthfulness and accuracy of Vartanian's responses, pointing out that Craven's e-

mails indicated that DW was in possession of valuable art work and other assets belonging to

Bennett, some of which had been sold, and others that were being processed for sale. It was also

asked how DW intended to make the scheduled $350,000 payments to Whiteford Taylor and

KaiserDillon if it didn't have any assets belonging to Bennett. (Appendix C)

22.     DW would claim that it paid the two law firms $255,000 from its own funds, had

not been reimbursed by Bennett or anyone else, was prepared to pay the upcoming April 1, 2019

payment the same way, and likely may not be reimbursed by Bennett or anyone else. Apparently Jordan was expected to believe that DW's only assess to Bennett assets were those described in the Security and Settlement Agreements. Nothing was said regarding any other assets belonging to Bennett elsewhere in the United States, China, or any other place in the Far East.

23.     DW would also claim that as of October 14, 2018, it had not foreclosed on its security interest in the collateral in Bennett's residences because it had no access to such assets. The Security and Settlement Agreements clearly state otherwise.

24.     On December 4, 2018, Jordan received an e-mail from Vartanian, asserting that his answers to the interrogatories were accurate and truthful. He went on to say that DW didn't have possession of any property owned by Bennett, only a security interest giving it a license to access Bennett's residences to take possession and control of furniture and furnishings, jewelry, and other assets solely for disposition in a foreclosure sale. (Appendix D)  But Craven said DW had sold artwork belonging to Bennett and had taken possession of other property it was preparing for sale. (Appendix A, pp. 1, 10.)

25.     Vartanian included the September 17th Settlement Agreement with his e-mail, but not its attachments. On December 6, 2018, Jordan served DW with a subpoena to produce the entire Settlement Agreement and it did. Attachment A listed specific collateral subject to the agreement, and Attachments C and C-1 identified a number of additional pieces of jewelry.  The total appraised value of the collateral exceeded $650,000.

26.     The Settlement Agreement revealed that DW was given more than a bare security interest in the collateral, it included "all of Bennett's right, title, and interest in the following, "wherever located," ***whether now owned or hereafter  acquired or arising: (a) rights to proceeds from the sale of art***, real estate, automobiles, ***jewelry or other personal property***, and

6

(b) as to any assets associated with any of Bennett's businesses [Province] all (i) *accounts receivable*, (ii) chattel paper, (iii) contracts, (iv) *deposit accounts,* (v) equipment, (vi) fixtures, (vii) investment property, (viii) letter-of-credit rights, (ix) supporting obligations, (x) *money*, (xi) additions, accessories and attachments to any of the foregoing. (Emphasis added.)  It also confirmed that DW had unrestricted access to her residences at all times necessary to obtain possession and control of the property.

27.     The Settlement Agreement states further that to the extent distributions to DW exceed $640,000--there is no indication where such distributions would come from--DW shall pay Bennett an amount equal to what DW receives in excess of $640,000, up to and including $320,000, and to the extent the distribution exceeds $640,000, then in addition to any amount payable to DW, it shall pay Bennett 35%.

28.     On January 25, 2019, Jordan served a second Writ of Attachment on DW since a payment to the other two law firms was scheduled to be made February 1, 2019, and it was reasonable to believe DW had access to assets of Bennett somewhere to make that payment or it made the payment repay itself later. Vartanian responded again to the interrogatories. His answer to Interrogatory No. 1 was the same, but not Interrogatory No. 2:

2.     At the time of the service of the writ, and at the time this answer is filed, Dickinson Wright is not in possession or charge of any goods, chattels, or credits of any of the defendants. Dickinson Wright has a perfected security interest in property owned by Dawn Bennett located in her condominium. Upon information and belief the U.S. government has seized that property within the last several weeks.  (Appendix E)

29.     Confident that Craven was telling the truth that DW had sold Bennett's art work and other assets in its possession and control were being processed for sale, Jordan filed an asset forfeiture motion in the D.C. Superior Court. DW opposed it, claiming Vartanian's responses to the writs were true and accurate.

30.     But in an affidavit submitted by Vartanian in support of DW's opposition, he admits that his responses to the interrogatories were not true. Thus he reveals that on March 29, 2018, DW paid $3,210.37 out of Province's client trust account to a technology and consulting company, and when that money was returned to DW, around October 24, 2018, it was placed in Province's trust account and remains there. (Appendix F) As Province is wholly-owned and controlled by Bennett and any funds in its trust account belong to Bennett, they were attachable, Vartanian therefore lied, under oath, that DW did not possess any goods or credits of Bennett. Moreover, he made no effort to correct his testimony and apparently has no intention of doing so.

## STATEMENT OF CLAIMS

### COUNT I: CONSPIRACY TO DEFRAUD

31.     Plaintiff adopts and incorporates by reference paragraphs 1 through 30.

32.     Conspiracy to defraud occurs where two or more parties work together to develop a scheme to defraud another by representing an existing material fact as true, knowing it to be false, or making it recklessly without regard to its truth or falsity, intending a third party to rely on it to his damage.

33.     Together with Craven and Vartanian, DW knowingly falsely promised and assured Jordan that Bennett's unpaid legal fees would be paid from the sale of assets in its possession and control.  Art work and other valuable assets were sold but, as promised, nothing was ever paid to Jordan, and there was never any intention of doing so. Defendants intentionally lied to Jordan knowing that he would rely on such misrepresentations to delay filing suit against Bennett to recover his unpaid legal fees, thereby protecting DW's interest in the collateral pledged for their indebtedness from attachment by Jordan.

34.     What defendants did satisfies the elements of a conspiracy to defraud. They are

therefore jointly and severally liable for the damages they have caused, which in this case is the

$115,983.52, plus costs and interest, that Jordan has been effectively prevented by their

misconduct from collecting.

## COUNT II

### FRAUD

35.     Plaintiff adopts and incorporates by reference paragraphs 1 through 34.

36.     Four criteria must be met here to establish a claim for fraud: First, a false

representation of a material fact; second, knowledge or belief that the representation was false;

third an intention to induce Jordan to act or refrain from acting in reliance upon the false

representation; and fourth, damage to Jordan resulting from his justifiable reliance upon such

bogus assertion.

37.     Craven was primarily responsible for policing the Settlement and Security

Agreements with Bennett and Province to make sure DW's legal fees were paid and that the

pledged collateral, and any other available assets of Bennett in DW's control, were not diverted

from such purpose.

38.     As shown, on January 5, 2018, Craven first approached and assured Jordan that

DW would pay Bennett's past due legal fees and indicated that his firm was in control of assets

belonging to Bennett for just such purpose. Craven asked Jordan to provide wire instructions so

that the money could be sent to him "next week."

39.     On February 2, 2018, Craven again contacted Jordan and promised to send him a

$20,000 partial payment the following week and assured him that there would be more since

"additional assets were being processed for sale." On February 21, 2018, Craven acknowledged

that a substantial balance (over $100,000) was still owed to Jordan and promised payment.

40.     For the next nine months, Craven continued to assure Jordan that he (Craven) or

we and us (Craven and DW) would make sure he was paid. (Appendix A) At no time did Craven

ever say that DW was merely Bennett's intermediary or disclaim any responsibility by DW for

the promised payments to Jordan.

41.     As Craven revealed, DW sold significant assets belonging to Bennett, including

her art collection for at least $350,000 as well as other valuable assets. And while Craven told

Jordan that he would be paid out of such proceeds, nothing was ever sent. Craven knew and

intentionally misrepresented to Jordan that DW would pay Bennett's obligations, knowing full

well that it had no intention of doing so.

42.     Defendants understood, intended, and expected that Jordan would believe their

false payment promises and delay filing suit against Bennett to recover his unpaid legal fees, and

that is what he did.  As a result of their fraudulent misconduct, Jordan has lost any ability to

recover personally from Bennett what she owes him and defendants are responsible.

Accordingly, Jordan is entitled to compensatory damages as set forth below.

43.     Additionally, the willful, wonton, and malicious actions of defendants, as

described above, was so devious and egregious, and since done by officers of the court who have

pledged to uphold the integrity of the law, punitive damages are also warranted.

## COUNT III

## BREACH OF CONTRACT

44.     Plaintiff adopts and incorporated by reference paragraphs 1 through 43.

45.     An enforceable contract requires (1) agreement as to all material terms; and (2) intention of the parties to be bound. Elements of a breach of contract are a binding contract, performance by the party seeking recovery, non-performance by the other party, and damages attributable to the breach. A novation is a mutual contract between three parties: the creditor, the original debtor, and a third party, in which it is understood that the new party has assumed responsibility for the obligation of the original debtor.  In the case here, DW for Bennett.

46.     DW and Bennett entered into Security and Settlement Agreements to assure Bennett's payment of $842,080.15 in past due legal fees and expenses. Under these agreements, DW controlled and possessed $650,000 in collateral as security for repayment, with the right to sell such assets if necessary.   Craven was charged by DW with seeing that Bennett lived up to the terms of those agreements.

47.     Jordan was owed $115,988.52 in legal fees by Bennett and was threatening to sue Bennett when Craven approached him in January 2018, and promised to see that what was owed him would be paid by DW, thereby protecting DW security interest in Bennett's assets from Jordan acquiring a judgment and potentially attaching and selling such  assets to satisfy Bennett's indebtedness to him.

48.     From that date on, Craven continued to promise and assure Jordan that DW would see that his fees were paid; there never was any intention to pay Jordan. In  reliance on such false assurances and representations, Jordan delayed filing suit against Bennett to recover what was owed him.  DW therefore breached its contract with Jordan to pay Bennett's indebtedness.

49.     Not only did DW breach its agreement with Jordan to be responsible for the payment of what Bennett owed him, that promise, Jordan's acceptance of DW's substitution for

11

Bennett as the debtor, and Bennett's implied consent to the arrangement, constituted a novation of Bennett's obligation to Jordan and made DW liable to Jordan for still another reason.

50.     Accordingly, whether DW is deemed to have breached its agreement with Jordan alone, or whether its failure to perform amounted to the breach of the novation agreement among DW, Jordan, and Bennett, substituting DW for Bennett as the debtor to Jordan, the result is the same: DW is liable to Jordan for breach of their agreements and is responsible for the resulting damages.

## RELIEF SOUGHT

**WHEREFORE,** plaintiff asks for judgment against defendants, jointly and severally, as follows:

(a)  An award of $115,983.52 in compensatory damages, plus interest;

(b)  An award of $300,000 in punitive damages;

(c)  An award of the costs of this suit, including reasonable attorney's fees; and

(d)  an award of such further relief as the court deems just and reasonable in the circumstances.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues and damages arising herein.

Respectfully submitted,

/s/Harry J. Jordan, Esq.
Harry J. Jordan, Esq. (Bar No. 047860)
1101 17th Street, NW, Suite 609
Washington, DC 20036-4718
(202) 416-0216
hjjlaw@msn.com

Plaintiff Pro Se

## CERTIFICATION

I hereby state, under penalty of law, that the foregoing factual statements are true and correct to the best of my knowledge, information, and belief.

Harry J. Jordan

Sworn to and stated before me a notary in and for the District of Columbia, this 22 day of March, 2019.

My commission expires:

BONNIE V. JONES
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires March 31, 2022

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this complaint, summons, and all other required documents were served this 22 day of March, 2019, by certified mail, return receipt requested, and in accordance with this court's electronic service rules and requirements on Defendants Jeffrey Craven, Esq., Dickinson Wright PLLC, 1825 Eye Street, NW, Suite 900, Washington, DC 20006, Michael A. Vartanian, Esq., 350 S. Main Street, Suite 900, Ann Arbor, MI 48104, and H. Jonathan Redway, Esq., and Chelsea M. Smialek, Esq., Dickinson Wright PLLC, 1825 Eye Street, NW, Suite 900, Washington, DC 20006, Defendant Dickinson Wright's counsel.

/s/  Harry J. Jordan
Harry J. Jordan

13

# APPENDIX B

FILED
CIVIL ACTIONS BRANCH

NOV 0 5 2018

Superior Court
of the District of Columbia
Washington, DC.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
CIVIL DIVISION
500 Indiana Ave., N.W., Room JM-170
Telephone 879-1133

Harry J Jordan,     Dawn J. Bennett and
Pro Se              DJB Holdings d/b/a
                    DJB Holdings, LLC
_____ vs. _____
        *Plaintiff*                    *Defendant*

NO. CA (2018) CA 002000 C

## WRIT OF ATTACHMENT
## OTHER THAN WAGES, SALARY AND COMMISSIONS

To: Dickinson Wright, PLLC, International Square,
1815 Eye St, N.W; Suite 900, Washington, DC
20006 , Garnishee:

You are hereby notified that any money, property or credits other than wages, salary and commissions of the above named defendant, are seized by this Writ of Attachment, and you are required to hold it and not to pay or surrender it to the defendant, or to anyone else without an order from this Court.

The judgment against the defendant was entered Sept. 4, 2018 in the amount of 115,983.52
$_____ , and costs amounting to $_____ 226.00 74¢ with interest at __ per annum from
Sept. 4, 2018 less credits of $ 0 .

Within ten (10) days after this writ is served upon you, you are required to answer the following interrogatories, UNDER THE PENALTY OF PERJURY, and to file in this Court one copy of this paper with your answers written thereon, and to serve a copy, by mail or other means, upon the plaintiff and upon the defendant. If you fail to do so, judgment may be entered against you for the entire amount of the Plaintiff's claims, with interest and costs.

Harry J. Jordan                    Telephone No. (202) 416-0216
*Attorney for Plaintiff*

                                   CLERK OF THE COURT

Issued: ___ NOV 0 5 2018 ___ 19___   By: _____
                                              *Deputy Clerk*

## INTERROGATORIES TO BE ANSWERED BY GARNISHEE

1. Were you at the time of the service of the annexed writ of attachment, or have you been between the time of such service and the filing of your answer to this interrogatory indebted to the defendant(s); and, if so, how and in what amount?

Answer At the time of service of the writ, and at the time this answer is filed, Dickinson Wright PLLC is not indebted to any of the defendants. Under the terms of a settlement agreement with Dawn Bennett executed prior to the service of the writ, Dickinson Wright is obligated to make certain payments in the future to certain entities other than the defendants, and may also in the future (subject to certain contingencies which have not occurred and may not occur) become obligated to make certain payments to Dawn Bennett.

Form CVBI47NNov. 88                    (OVER)                    9-11761 ed-318

2.  Had you at the time of the service of the annexed writ of attachment, or have you had be-
tween the time of such service and the filing of your answer to this interrogatory, any goods, chattels,
or credits of the defendant(s) in your possession or charge, and, if so, what?

_____ Answer   At the time of service of the writ, and at the time this answer is filed, Dickinson

_____ Wright is not in possession or charge of any goods, chattels or credits of any of the defendants.

_____

_____

_____

I declare under the penalties of perjury that the answers to the above interrogatories are, to
the best of my knowledge and belief, true and correct as to every material matter.

Date: _November 14, 2018_          DICKINSON WRIGHT PLLC
                                                    Garnishee
                                   By: Michael G. Vartan

                                   Its: GENERAL COUNSEL

# APPENDIX C

**HARRY J. JORDAN**
Attorney at Law
1101 17th Street, N.W.
Suite 609
Washington, D.C. 20036-4718

Member of
District of Columbia Bar

November 27, 2018

Telephone: (202) 296-2900
Direct Line: (202) 416-0216
Facsimile: (202) 296-1370
E-mail: hjjlaw@msn.com

Chelsea M. Smialek, Esq.
Dickinson Wright PLLC
International Square
1825 Eye Street, NW
Suite 900
Washington, DC 20006

> Re: Jordan v. Dawn J. Bennett, et al., D.C. Superior
> Court, Case No. 2018 CA 002000 C,
> Response to Writ of Attachment

Dear Ms. Smialek:

As you know, the D.C. Superior Court entered a judgement on September 4, 2018, in my favor against Dawn J. Bennett and DJB Holdings dba DJB Holdings in the amount of $115,983.52, plus post-judgment interest and costs.  I served a Writ of Attachment on your firm on November 5, 2018, because I was aware that it possessed several valuable works of art belonging to Ms. Bennett and were selling them at her direction to satisfy the legal fees and expenses she owed Dickinson Wright and others including me.

Attached are a series of e-mails from January 5, 2018 through March 1, 2018, between me and Jeff Craven of your firm, confirming that Dickinson Wright had possession of and was selling the art work and assuring me that I would be paid by your firm out of such proceeds.  See, for example, the e-mails dated February 2, 2018, February 16, 2018, February 21, 2018, and February 28, 2018, and March 1, 2018.  These e-mails also show that Dickinson Wright continued to act as Ms. Bennett's counsel during this period and directed me to continue to provide legal services on her behalf on the assurance I would be paid for that work and what I had already provided.

Dickinson Wright's responses to the interrogatories accompanying the Writ of Attachment admit that your firm has or otherwise controls assets belonging to Dawn Bennett or DJB Holdings.  The first interrogatory asks, in part, "Were you at the time of the service of the annexed writ of attachment . . . indebted to the defendant(s), and, if so, how and in what amount?"  Michael G. Vartanian, Dickinson Wright's General Counsel, responded, under penalty of perjury, that at the time of the service of the writ and his answer, Dickinson Wright is not indebted to any of the defendants, but that under the terms of a settlement agreement with Dawn Bennett, executed prior to service of the writ, Dickinson Wright is obligated to make certain payments in the future to certain entitles, other than defendants, and may also in the

Chelsea M. Smialek, Esq.
November 27, 2018
Page 2

future (subject to certain contingencies which have not occurred and may not occur) become obligated to make certain payments to Ms. Bennett.

In response to the second interrogatory, Mr. Vartanian states, "At the time of the service of the writ, and at time of this answer is filed, Dickinson Wright is not in possession or charge of any goods, chattels or credits of any of the defendants." If this is true, how is Dickinson Wright going to make the "certain payments" designated by Dawn Bennett and DJB Holdings pursuant to their settlement agreement? The reply does not make sense. There must be assets of Ms. Bennett or DJB Holdings controlled by Dickinson Wright or how is it to make the "certain payments" called for by the settlement agreement.

Another thing, Dickinson Wright's assurance that I would be paid out of the art sale proceeds amounted to a guarantee but also satisfied the elements of a novation. A novation exits under civil law where the creditor and debtor remain the same, but a new debt takes place of the old one; and where the debt remains the same, but a new debtor is substituted. *Wheeler v. Wardell*, 173 Va. 168, 3 S.E.2d 377, 380 (1939); *Restatement of Contracts*, §§ 423,430. Since Dickinson Wright assumed responsibility to pay me out of the art sale proceeds, a new debt was created.

If Dickinson Wright stands by its claim that it has no control or influence, directly, indirectly, or under any other arrangement, of property of Dawn Bennett or DJB Holdings, including any potential future interest, which I don't think is true, I intend to file a motion to examine Mr. Vartanian and Mr. Craven in open court and to subpoena your firm's records regarding the settlement agreement with Dawn Bennett and DJB Holdings. Hopefully this will not be necessary and this matter can be resolved amicably.

Very truly yours,

Harry J. Jordan

Encls.
Cc: Michael G. Vartanian
    Jeff Craven

# APPENDIX D

**From:** Michael G. Vartanian
**Sent:** Tuesday, December 4, 2018 11:20 AM
**To:** hjjlaw@msn.com
**Subject:** Your letter of November 27, 2018

Mr. Jordan,

I received your November 27, 2018 letter addressed to Chelsea Smialek.  Please address any future correspondence to me.

The answers to the interrogatories are accurate and truthful.  Dickinson Wright does not have possession of property owned by Ms. Bennett.   Dickinson Wright does, however, have a properly perfected security interest in certain property owned by Ms. Bennett, which is, of course, senior in priority to any lien created by your judgment, and Dickinson Wright can foreclose on that property to satisfy debts owed by Ms. Bennett to the firm.  Under the terms of our settlement agreement with Ms. Bennett, a copy of which is attached to Bennett's motion to sell property, Dickinson Wright was given a license to access Ms. Bennett's condominiums to obtain possession and control of furniture and furnishings, jewelry and exercise equipment located at the two condominiums solely for disposition of that property in accordance with the terms of our security agreement, i.e. a UCC foreclosure sale.

If and when the property may be sold in accordance with the terms of the settlement agreement and the UCC,  and depending on the amount of proceeds that may be generated by any such sale, Ms. Bennett may be entitled to receive some of the proceeds.  Whether there are proceeds that she may be entitled to receive is entirely speculative.  In any event, Dickinson Wright is not in possession of any of this property and has not taken any steps at this point to take possession of any property or to proceed with the sale of that property.  To our knowledge, the property remains in the condominiums.

Finally, Dickinson Wright denies the claims asserted in the penultimate paragraph of your letter.

**Michael G. Vartanian** Member

350 S. Main Street
Suite 300
Ann Arbor MI 48104

| Profile | V-Card |

Phone 734-623-1690
Mobile 313-320-7525
Fax    844-670-6009
Email  MVartanian@dickinsonwright.com

**DICKINSON WRIGHT** PLLC

ARIZONA  CALIFORNIA  FLORIDA  KENTUCKY  MICHIGAN  NEVADA  OHIO
TENNESSEE  TEXAS  WASHINGTON D.C.  TORONTO

The information contained in this e-mail, including any attachments, is confidential, intended only for the named recipient(s), and may be legally privileged. If you are not the intended recipient, please delete the e-mail and any attachments, destroy any printouts that you may



1825 Eye Street, N.W. Suite 900
Washington, DC 20006-5403
Telephone: (202) 457-0160
Facsimile: (844) 670-6009
http://www.dickinsonwright.com

H. Jonathan Redway
JRedway@dickinsonwright.com
(202) 659-6946

December 21, 2018

**VIA U.S. MAIL AND E-MAIL : hjjlaw@msn.com**

Harry J. Jordan
1101 17th Street, N.W., Suite 609
Washington, DC 20036

     Re:   December 6, 2018, Subpoena Received December 14, 2018

Dear Mr. Jordan:

Dickinson Wright received your December 6, 2018 subpoena on December 14, 2018. In Mr. Vartanian's December 5, 2018 email to you, he included a copy of the Settlement Agreement. The copy attached to that email did not include the attachments. All attachments to the Settlement Agreement are attached. You now have the complete Settlement Agreement. The Settlement Agreement, which includes our security interest in her property, is the only agreement we currently have with her regarding payment for legal services rendered to her.

The subpoena also requests production of "Appendix documents." In accordance with Rule 45(c)(2)(B), Dickinson Wright objects to the production of the "Appendix documents" for the following reasons:

     1.   The request for "Appendix documents," which is apparently set forth in what the subpoena describes as "Definitions," appears to request documents related to the Settlement Agreement. Dickinson Wright objects on the basis that the subpoena is vague and ambiguous on what documents are requested. Dickinson Wright also objects to the subpoena on the basis that production would cause undue expense and burden on Dickinson Wright, which is not a party to case you filed against Dawn Bennett.

     2.   The Settlement Agreement is the final and entire agreement between Dickinson Wright and Dawn Bennett regarding her assets or other things of value to satisfy any claims that Dickinson Wright has against Dawn Bennett for legal services. Consequently, production of "Appendix documents" concerning the Settlement Agreement, including drafts of the agreements, correspondence with Dawn Bennett's attorneys and other documents relating to the settlement negotiations with Dawn Bennett's counsel, would be unduly burdensome in light of the fact that such documents are superseded by the settlement agreement and are not relevant.

     3.   Dickinson Wright also objects to the production of "Appendix documents" on the basis of attorney client privilege with respect to any documents and communications concerning the settlement agreement by and between management of Dickinson Wright and its

DICKINSON WRIGHT PLLC

Harry J. Jordan
December 21, 2018
Page 2


general counsel.  The number of documents is voluminous and it would cause undue expense and burden on Dickinson Wright to produce a privilege log relating to those documents.

Please do not hesitate to call if you have any questions.

Very truly yours,

H. Jonathan Redway

HJR:CMS
Attachment
cc:    Michael Vartanian


DC 99998-2655 426918v1

# APPENDIX E

F I L E D
JUDGMENT OFFICE
JAN 25 2019
Superior Court
of the District of Columbia
Washington, D.C.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
CIVIL DIVISION
500 Indiana Ave., N.W., Room JM-170
Telephone 879-1133

Harry J. Jordan                    Dawn J. Bennett et al
                                   DJ B Holdings d/b/a
                                   DJB Holding
_____ vs. _____
          Plaintiff                              Defendant

NO. CA  2018 CA 002 000 C

## WRIT OF ATTACHMENT
### OTHER THAN WAGES, SALARY AND COMMISSIONS

To  Dickinson Wright PLLC, 1815 Eye Street, NW
Suite 900, Washington, DC 20006 _____, Garnishee:

You are hereby notified that any money, property or credits other than wages, salary and commissons of the above named defendant, are seized by this Writ of Attachment, and you are required to hold it and not to pay or surrender it to the defendant, or to anyone else without an order from this Court.

The judgment against the defendant was entered  Sept. 4, 2018  in the amount of
$15,983.52  and costs amounting to $  238.00  with interest at  4  per annum from
Sept. 4, 2018 _____ less credits of $  0  _____.

Within ten (10) days after this writ is served upon you, you are required to answer the following interrogatories, UNDER THE PENALTY OF PERJURY, and to file in this Court one copy of this paper with your answers written thereon, and to serve a copy, by mail or other means, upon the plaintiff and upon the defendant. If you fail to do so, judgment may be entered against you for the entire amount of the Plaintiff's claims, with interest and costs.

Harry J. Jordan Pro Se
_____          Telephone No. _____
     Attorney for Plaintiff

                                   **CLERK OF THE COURT**

Issued:  1/25/2019  19___   By:  Adrienne J. Marsh
                                        Deputy Clerk

## INTERROGATORIES TO BE ANSWERED BY GARNISHEE

1. Were you at the time of the service of the annexed writ of attachment, or have you been between the time of such service and the filing of your answer to this interrogatory indebted to the defendant(s), and, if so, how and in what amount? At the time of service of the writ, and at the time this answer is filed, Dickinson Wright PLLC is not indebted

Answer. to any of the defendants. Under the terms of a settlement agreement with Dawn Bennett executed prior to the service of the writ, Dickinson Wright is obligated to make certain payments in the future to certain entities other than the defendants, and may also in the future (subject to certain contingencies which have not occurred and may not occur) become obligated to make certain payments to Dawn Bennett.

2. **Had you at the time of the service of the annexed writ of attachment, or have you had between the time of such service and the filing of your answer to this interrogatory, any goods, chattels, or credits of the defendant(s) in your possession or charge, and, if so, what?**

Answer     At the time of service of the writ, and at the time this answer is filed, Dickinson Wright is not in possession or charge of any goods, chattels or credits of any of the defendants.

Dickinson Wright has a perfected security interest in property owned by Dawn Bennett located in her condominium.  Upon information and belief, the U.S. government has seized that property within the last several weeks.

I declare under the penalties of perjury that the answers to the above interrogatories are, to the best of my knowledge and belief, true and correct as to every material matter.

Date:   January 30, 2019

Dickinson Wright PLLC

By:  Michael G. Vartanian        *Garnishee* *Michael G*

Its:  General Counsel  EMERITUS   *Vartanian*

# APPENDIX F

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| HARRY J. JORDAN, ESQ., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2018 CA 002000 C |
| v. | ) |
| | ) |
| DAWN J. BENNETT, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT OF MICHAEL G. VARTANIAN

I, Michael G. Vartanian, being first duly sworn, depose and say:

1.      I have personal knowledge of the facts stated in this Affidavit, and if I am called as a witness, I am competent to testify to the matters set forth herein.

2.      I am the General Counsel Emeritus of the law firm of Dickinson Wright PLLC ("Dickinson Wright").  Prior to January 2019, I served as Dickinson Wright's General Counsel.

3.      In my role as General Counsel, I advised the firm on matters related to client representations, including ethic issues arising in connection with such representations.

4.      During my time as General Counsel, Dickinson Wright was engaged by Dawn J. Bennett ("Bennett") on behalf of her company, Province of the Dragon, LLC ("Province") to handle corporate legal services for the company.

5.      Dickinson Wright was later engaged by Bennett in her individual capacity to defend against a criminal matter.

6.      To secure payment for its legal representation, Dickinson Wright entered into a Security Agreement with Bennett and Province.  A true and accurate copy of the Security Agreement is attached to Harry J. Jordan, Esq.'s ("Jordan") Motion for Asset Forfeiture Order at Appendix A.

7.     As the Security Agreement states, Dickinson Wright was granted a security interest in certain collateral defined in Schedule A of the Security Agreement.  It was not given possession of said collateral.

8.     Dickinson Wright perfected its security interest on January 3, 2018, by filing a financing statement.

9.     Subsequently, there came a time during the representation of Province and Bennett where they were indebted to Dickinson Wright in the amount of $842,080.15. Dickinson Wright, Province and Bennett entered into a Settlement Agreement regarding that amount and to address other issues.  A true and accurate copy of the Settlement Agreement is attached to Jordan's Motion for Asset Forfeiture Order at Appendix B.

10.    As part of the Settlement Agreement, Dickinson Wright agreed to pay a total of $320,000 to third-parties in accordance with a detailed schedule, as follows:

a) One Hundred Twenty Five Thousand Dollars ($125,000) to Whiteford Taylor within five (5) days of the full execution of this Agreement;

b) On December 1, 2018:

i) Thirty Five Thousand Dollars ($35,000) to KaiserDillon; and

ii) Thirty Thousand Dollars ($30,000) to Whiteford Taylor;

c) On February 1, 2019:

i) Sixty Thousand Dollars ($60,000) to Whiteford Taylor; and

ii) Five Thousand Dollars ($5,000) to KaiserDillion; and

d) On April 1, 2019, Sixty Five Thousand Dollars ($65,000) to Whiteford Taylor.

Settlement Agreement, p. 2.

11.   Dickinson Wright paid the $125,000 and the December 1, 2018 payment using its own funds. It did not foreclose on the collateral identified in the Security Agreement or otherwise sell Bennett's or Province's property to make those payments.

12.   In accordance with the terms of the Settlement Agreement, Dickinson Wright also transferred the sum of $52,472.70 belonging to "Debtor," i.e., Bennett and Province, which was held in a trust account, to Whiteford Taylor on September 19, 2018.

13.   Dickinson Wright has not recouped any of the $842,080.15 owed to it because it has not foreclosed on the security interest it has in the collateral identified in the Security Agreement. As a result, Dickinson Wright has not made any payments to Bennett.

14.   Dickinson Wright has not foreclosed on the collateral identified in the Security Agreement because the Federal Government has asserted that at least some of the property is subject to forfeiture because the property was allegedly purchased with tainted assets. *See* Email from AUSA attached hereto as **Exhibit A**). For this reason, Bennett's counsel in her criminal case filed a motion (the "criminal motion" as identified in Dickinson Wright's Response), seeking a ruling from the court that certain property identified therein was not procured using proceeds from a fraud, and therefore, could be sold to pay certain expenses, including liens of record, such as Dickinson Wright's Security Interest.

15.   The collateral identified in the Security Agreement remains in Bennett's residence, to which Dickinson Wright does not possess keys or otherwise have access. It is Dickinson Wright's understanding that a bank has foreclosed on Bennett's residence.

16.   The answers to the interrogatories to the writ of attachment issued by Jordan on November 14, 2018 were truthful. As reflected in footnote 3 of the Response, I was unaware that Dickinson Wright had received a refund in the amount of $3,210.37 for a payment that Dickinson

4

Wright made from a Province of the Dragon client trust account to a company named Rackspace on March 29, 2018 for information technology (IT) server storage capacity and consulting services associated with the operations of Province of the Dragon. That sum was sent to Dickinson Wright on or about October 24, 2018, and placed in the Province of the Dragon Trust account where it remains.

17.     I have considered whether there was a need to amend the answers to the interrogatories in light of this information. I have concluded that there is no need to do so because Province of the Dragon is not a defendant in this case.

I declare that the above statements are true under penalty of perjury to the best of my knowledge, information, and belief.

FURTHER AFFIANT SAYETH NOT.

_____
Michael G. Vartanian

STATE OF MICHIGAN          )
                                              )SS
WASHTENAW COUNTY    )

Subscribed and sworn to be on this 9th day of January, 2019, in Washtenaw County, Michigan.

_____
Kelly Ann Armistead, Notary Public
State of Michigan, County of Livingston
Acting in Washtenaw County, Michigan
My Commission Expires: 10/2/2024

5